UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

SALAHUDDIN F. SMART,

    Plaintiff,

v.

COMMUNITY EDUCATION CENTER, INC., et al.,

    Defendants.

Civ. No. 16-2099 (KM) (JBC)

OPINION

---

**KEVIN MCNULTY, U.S.D.J.**

### I. INTRODUCTION

The plaintiff, Salahuddin F. Smart, is a former state prisoner now proceeding with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. At this time, this Court must screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted or because it seeks monetary relief from a defendant who is immune from suit. For the reasons set forth below, Mr. Smart's federal claims will be dismissed with prejudice as to one defendant and without prejudice as to the remaining defendants. Furthermore, this Court will decline to exercise supplemental jurisdiction over Mr. Smart's state law claims.

### II. BACKGROUND

The allegations of the complaint will be construed as true for purposes of this screening opinion. Mr. Smart's complaint names five defendants: (1) Community Education Center, Inc. ("CEC"); (2) Shelia Leonardo – Director of Talbot Hall; (3) Keith Hooper – Supervisor of

Operations for Talbot Hall; (4) New Jersey Department of Corrections; and (5) Evelyn Davis – Administrator.

Mr. Smart was incarcerated at Talbot Hall in 2014. At first, Jaleh Fassihi was permitted to visit with Mr. Smart. In August 2014, Jaleh Fassihi again attempted to visit Mr. Smart with her newborn child, but was not permitted to do so. She complained to Hooper, who denied her visitation rights. Mr. Smart states that he filed grievances as a result of Fassihi's being barred from visiting him.

Mr. Smart was transferred from Talbot Hall to Northern State Prison and ultimately to "CRAF" (Central Reception and Assignment Facility). While at CRAF, Mr. Smart states that Evelyn Davis, too, has barred Fassihi from visiting him. Mr. Smart has requested that CRAF investigate the visitor ban. However, Davis has refused to lift the ban.

Mr. Smart asserts that defendants CEC, Leonardo and Davis are liable to him for violating his First Amendment right to peaceably assemble with his family. Additionally, Mr. Smart argues that defendants CEC, Leonardo and Hooper are liable under the Eighth Amendment by subjecting him to cruel and unusual punishment in five ways:

> (1) denying him visitation from Fassihi; (2) suspending his weekend visit with Jalah Fassihi; (3) placing a visitor ban on plaintiff smart; (4) transferring plaintiff into a max facility prison because he challenge the denial of visit and weekend suspension of Jaleh Fassihi; and (5) not lifting the visitor ban.

(Dkt. No. 1)[1] Mr. Smart claims that the NJDOC is liable for giving CEC the authority to put in place the visitor ban and not affording him a process to have the visitor ban lifted. Mr. Smart seeks monetary damages.

---

[1] Mr. Smart also asserts parallel claims under the State constitution. He alleges that defendants CEC, Leonardo and Hooper are liable under the New Jersey Constitution, Article 1, par. 8 for these actions or inactions. Furthermore, Mr. Smart asserts that Davis is liable under the New Jersey Constitution Article 1, par. 8 for subjecting him to cruel and unusual punishment while at CRAF by denying him visitation.

2

### III.   LEGAL STANDARDS

District courts must review complaints in those civil actions in which a plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The relevant statute directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, *"pro se* litigants still must allege sufficient facts in their complaints to

support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV. DISCUSSION

### A. NJDOC

As indicated above, Mr. Smart seeks monetary relief from the NJDOC in his complaint. NJDOC is immune from suit under Section 1983. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Accordingly, "[t]he rule has evolved that a suit by private parties seeking to impose liability

4

which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). Indeed, the Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. *See Shahin v. Delaware,* 345 F. App'x 815, 817 (3d Cir. 2009) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984)). Section 1983 does not override a state's Eleventh Amendment immunity. *See Gromek v. Maenza,* 614 F. App'x 42, 44 (3d Cir. 2015) (citing *Quern v. Jordan,* 440 U.S. 332, 345 (1979)).[2]

NJDOC, as a department or agency of State government, is immune from this suit for money damages in federal court pursuant to the Eleventh Amendment. *See Durham v. Dep't of Corr.,* 173 F. App'x 154, 156 (3d Cir. 2006) (state department of corrections is immune from suit pursuant to the Eleventh Amendment) (citing *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977)); *see also Whitaker v. New Jersey State Prison,* No. 15-6744, 2016 WL 781897, at *2 n.2 (D.N.J. Feb. 29, 2016) (State of New Jersey and New Jersey Department of Corrections immune from suit for money damages under Section 1983); *Williams v. Gartrell,* No. 15-5609, 2015 WL 5110913, at *2 n.2 (D.N.J. Aug. 31, 2015) (same). Therefore, Mr. Smart's federal claims against the NJDOC will be dismissed with prejudice.

B. Eighth Amendment

Mr. Smart also claims that the remaining defendants, CEC, Leonardo, Hooper, and Davis, are liable for subjecting him to cruel and unusual punishment. I construe this as an Eighth Amendment claim based on the denial of visitation rights with Ms. Fassihi. The Eighth Amendment requires a prison official to provide humane conditions of confinement. Thus the

---

[2] This is a suit in federal court, and the Eleventh Amendment confers "forum immunity" from such a suit. I therefore do not discuss the closely parallel, but distinct, argument that the State and its agencies are not "persons" subject to suit under Section 1983 at all.

5

prison must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). A prisoner asserting a conditions-of-confinement claim must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Id.* at 834 (citing *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). These minimal civilized measures of life's necessities include food, clothing, shelter, sanitation, medical care and personal safety. *See Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 256 (3d Cir. 2010) (citations omitted). The plaintiff must also allege that the prison official acted with deliberate indifference to the prisoner's health or safety. *See Wilson v. Seiter,* 501 U.S. 294, 298–99 (1991). Thus, "'the official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'" *Wilson v. Burks,* 423 F. App'x 169, 173 (3d Cir. 2011) (quoting *Farmer,* 511 U.S. at 837). In analyzing whether the conditions of confinement violate the Eighth Amendment, a court examines the totality of the conditions at the institution. *See Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir. 1996). "Relevant considerations include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers." *Id.* (citing *Tillery v. Owens,* 907 F.2d 418, 427 (3d Cir. 1990)); *see also Riley v. DeCarlo,* 532 F. App'x 23, 26 (3d Cir. 2013).

Mr. Smart does not allege that he has been banned from receiving any visitors at all. Rather, he claims that he has been subjected to cruel and unusual punishment because he has been prevented from receiving visits from one particular family member, Ms. Fassihi. That is

6

insufficient to state an Eighth Amendment claim. *See Cordero v. Warren*, 612 F. App'x 650, 654 (3d Cir. 2015) ("temporary suspension of visitation with one visitor does not violate 'civilized standards of humanity and decency.'") (citations omitted); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1205 (10th Cir. 2004) ("[V]isitation with a particular person does not constitute a basic necessity, the denial of which would violate the Eighth Amendment."). Accordingly, Mr. Smart's Eighth Amendment claims against defendants CEC, Leonardo, Hooper and Davis will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### C. First Amendment – Visitation

Mr. Smart alleges that defendants CEC, Leonardo and Davis violated his First Amendment rights to peaceably assembly with his family—in particular, Ms. Fassihi.

Prisoners enjoy a First Amendment right to communicate with family and friends. *See Solan v. Zickefoose*, 530 F. App'x 109, 110 (3d Cir. 2013). When communication is restricted, any such regulation must be "reasonably related to legitimate penological interests." *Id.* at 110-11 (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254 (1987)). In making this determination, a court examines the following:

> (1) "whether there is a valid, rational connection between the prison regulation and the legitimate interest put forth to justify it"; (2) "whether inmates have an alternative means of exercising the right"; (3) "the burden on prison resources that would be imposed by accommodating the right"; and (4) "whether there are alternatives to the regulation that fully accommodate the inmate's rights at de minimis cost to valid penological objectives."

*Solan*, 530 F. at 111 (3d Cir. 2013) (quoting *Fontroy v. Beard*, 559 F.3d 173, 177–78 (3d Cir. 2009).

Mr. Smart does not contend that he has been held incommunicado; rather, he has been denied in-person visits with one family member. Even as to that family member, however, communication has not been cut off. Obviously, in-person visits are one way of communicating

7

with family and friends. The complaint does not allege that Mr. Smart has been cut off from communication with Ms. Fassahi by other means, such as phone calls and written communication. In similar contexts, courts have held that a prisoner-plaintiff fails to state a First Amendment claim when a prison prevents one method of communication with family and friends, but other modes of communication are available. *See Solan*, 530 F. App'x at 111 (denying First Amendment claim noting in part that despite limits on prisoner's use of email to communicate with those outside prison, prisoner failed to state First Amendment claim when he could communicate with them by other means); *Almahdi v. Ashcroft*, 310 F. App'x 519, 521 (3d Cir. 2009) (holding telephone use restriction on prisoner did not violate First Amendment and noting in part that there was no evidence that prisoner lacked other means of communicated with people outside of the prison); *Perez v. Fed. Bureau of Prisons*, 229 F. App'x 55, 58 n.3 (3d Cir. 2007) (denying First Amendment claim and noting in part that telephone limitation does not affect his ability to communicate with people outside the prison through letter writing and visitation); *Bumpers v. Formica*, No. 13-5250, 2014 WL 3817134, at *5 (D.N.J. Aug. 1, 2014) (denying First Amendment claim noting that "plaintiff does not allege that he lacked other means such as through the mail or in-person visits to communicate with his family").

Mr. Smart fails to allege that he lacks any means of communication with Ms. Fassahi aside from in-person visits. Accordingly, this Court will dismiss this claim against defendants CEC, Leonardo, Hooper and Davis without prejudice for failure to state a claim upon which relief may be granted. Mr. Smart may seek to file a proposed amended complaint that sufficiently corrects the deficiencies of this claim as stated above.[3]

---

[3] Mr. Smart may attempt to assert a claim of unequal or arbitrary application of prison regulations. The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S.

8

D. First Amendment – Retaliation

Mr. Smart's claim might be generously construed as one of First Amendment retaliation claim. The complaint alleges, for example, that CEC, Leonardo and Hooper "transferred plaintiff into a max facility prison because he challenge[d] the denial of visit and weekend suspension of Jaleh Fassihi."

> In order to state a claim for retaliation for engaging in protected conduct, [a plaintiff is] required to plead facts showing: (1) *he* engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of prison officials; and (3) a causal link between the exercise of his constitutional rights and the prison officials' decisions to punish him. Mack v. Warden Loretto FCI, 839 F.3d 286, 296–98 (3d Cir. 2016).

*Keeling v. Barrager*, No. 16-1131, 2016 WL 6818840, at *1 (3d Cir. Nov. 18, 2016) (citing *Mack v. Warden Loretto FCI*, 839 F. 3d 286 296-98 (3d Cir. 2016)) (emphasis added). The filing of a prison grievance constitutes constitutionally protected conduct. *See Laurensau v. Romarowics*, 528 F. App'x 136, 139 (3d Cir. 2013) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). To rise to the level of an adverse action, a punishment must be sufficient to "deter a person of ordinary firmness from exercising his constitutional rights." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Confinement to administrative segregation can constitute an adverse action. *See Szemple*

---

432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Such a claim is not an easy one to maintain. To state a claim under the Equal Protection Clause, a plaintiff may allege that: (1) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates. *See id.* Where the plaintiff does not claim membership in a protected class, he must allege arbitrary and intentional discrimination in order to state an equal protection claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Specifically, he must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Mr. Smart does not state that he is a member of a protected class in the complaint, and prison inmates are not members of a protected class. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect classification) (citations omitted). Therefore, an equal protection claim could proceed only under the "class-of-one" theory as stated in *Olech*.

9

*v. Talbot*, 141 F. App'x 52, 54 (3d Cir. 2005) (citing *Allah v. Seiverling*, 229 F.3d 220, 225-26 (3d Cir. 2000)).

With respect to the third element, the plaintiff must allege that the constitutionally protected conduct was a substantial or motivating factor for the adverse action. *See Velasquez v. Diguglielmo*, 516 F. App'x 91, 95 (3d Cir. 2013) (citing *Cater v. McGrady*, 292 F.3d 152, 157, 158 (3d Cir. 2002)); *Rauser*, 241 F.3d at 333). Furthermore:

> To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff (here, a prisoner) usually has to prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). If neither of these showings is made, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation." *Id.*

*DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010). While temporal proximity is relevant in First Amendment retaliation cases, *see Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002) (citing *Rauser*, 241 F.3d at 334), "'[t]he mere passage of time is not legally conclusive proof against retaliation.'" *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302 (3d Cir, 2007) (quoting *Robinson v. Southeastern Pa. Transp. Auth*, 982 F.2d 892, 894 (3d Cir. 1993)) (other citation omitted). Furthermore, a plaintiff must allege and prove that the defendant had knowledge of the constitutionally protected activity. *See, e.g. Jordan v. Hastings*, No. 12–7932, 2013 WL 3810577, at *4 (D.N.J. July 22, 2013). Without such knowledge, any adverse action cannot be shown to be retaliatory.

In this case, Mr. Smart may be claiming that the retaliatory adverse action consisted of his transfer from Talbot Hall to Northern State Prison where, construing the complaint liberally, he alleges he was placed in administrative segregation. The complaint and attached exhibits do

10

not indicate, however, that *he* filed a grievance prior to his transfer. There is an August 30, 2014 letter of complaint to Hooper; this, however, was not a grievance filed by Mr. Smart, but rather a letter from Ms. Fassahi. Mr. Smart does not indicate that he exercised *his* First Amendment rights prior to the transfer. Mr. Smart attaches evidence of a grievance that he filed, but this grievance was filed when he had already been transferred to CRAF. Thus, Mr. Smart fails to allege a causal connection between the grievance and the transfer from Talbot Hall to Northern State Prison, which occurred before the filing of the grievance.[4]

The complaint fails to allege another element of a retaliation claim: that either CEC or Hooper knew of any constitutionally protected activity when they took the allegedly adverse action. *See Jordan v. Hastings*, No. 12–7932, 2013 WL 3810577, at *4 (D.N.J. July 22, 2013) (finding that plaintiff failed to allege causal connection to sustain retaliation claim where he failed to allege that defendants had knowledge of his constitutionally protected activity); *Griffin–El v. Beard*, No. 06–2719, 2013 WL 228098, at *5 (E.D. Pa. Jan. 22, 2013) ("[A] defendant may not be held liable for retaliation absent evidence sufficient to show that the defendant knew of the plaintiff's protected activity.") (citing *Laskaris v. Thornburgh*, 733 F.2d 260, 265 (3d Cir. 1984); *Booth v. King*, 228 F. App'x 167, 172 (3d Cir. 2007); *Jacobs v. Pa. DOC*, No. 04–1366, 2009 WL 3055324, at *5 (W.D. Pa. Sept. 21, 2009)).

This Court will dismiss Mr. Smart's First Amendment retaliation claim without prejudice to the filing of a proposed amended complaint that remedies the deficiencies identified here.

---

[4] Indeed, the filing of the grievance *after* the transfer indicates that Mr. Smart was not deterred from exercising his First Amendment rights. *See Monroe v. Phelps*, 520 F. App'x 67, 70-71 (3d Cir. 2013) (holding that the continued exercise of one's First Amendment rights is sufficient to prove that a complained-of action was not adverse).

E. <u>State Law Claims</u>

The only potential basis for Mr. Smart's state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. In light of my rulings above, however, there are no viable federal claims pending against the defendants. When a court has dismissed all federal claims, it has the discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. *See id.* § 1367(c)(3). Because this litigation is at the earliest stages, and because the federal claims as pled are insubstantial, this Court will exercise its discretion to decline supplemental jurisdiction over Mr. Smart's state law claims.

## V. CONCLUSION

For the foregoing reasons, Mr. Smart's federal claims against the NJDOC will be dismissed with prejudice as that defendant is immune from suit. Mr. Smart's remaining federal claims against the other defendants will be dismissed without prejudice for failure to state a claim upon which relief may be granted. This Court will also decline to exercise supplemental jurisdiction over Mr. Smart's state law claims.

As to the federal claims dismissed without prejudice, Mr. Smart shall be given an opportunity to file a proposed amended complaint within 30 days that corrects the deficiencies identified above. Should federal claims remain, the Court may, within its discretion, reconsider the dismissal of state law claims for lack of jurisdiction. An appropriate order will be entered.

DATED: January 17, 2017

KEVIN MCNULTY
United States District Judge